IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

|  |  |  |
|---|---|---|
| Wendell Cooper, | ) | Case No. 7:13-cv-00991-JMC-JDA |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | **REPORT AND RECOMMENDATION** |
|  | ) | **OF MAGISTRATE JUDGE** |
| Spartanburg County School District No 7, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

This matter is before the Court on Defendant's motion to dismiss Plaintiff's
Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil
Procedure [Doc. 22][1] and on Plaintiff's motion to amend the Amended Complaint [Doc 30].
Plaintiff is proceeding pro se.  Pursuant to the provisions of Title 28, United States Code,
Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is
authorized to review all pretrial matters in cases filed by individuals proceeding pro se and
to submit findings and recommendations to the District Court.

---

[1]The Fourth Circuit has not resolved which of these rules, 12(b)(1) or 12(b)(6), applies to a motion
to dismiss on the basis of Eleventh Amendment immunity. *See Constantine v. Rectors & Visitors of George
Mason Univ.*, 411 F.3d 474, 481 (4th Cir.2005) (stating in dicta that "Eleventh Amendment immunity does not
limit a federal court's subject-matter jurisdiction"); *Andrews v. Daw*, 201 F.3d 521, 525 n. 2 (4th Cir.2000)
("Our cases have been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a
dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction
under Rule 12(b)(1)."). In evaluating a defendant's challenge to subject matter jurisdiction, the court is to
"regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the
pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg &
Potomac R.R. Co. V. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  The court should grant the motion
"only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter
of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir.1999) (internal quotation marks and citations
omitted).

*Procedural History*

Plaintiff filed this action on April 12, 2013 [Doc. 1] and amended his Complaint on May 6, 2013 [Doc. 15]. Spartanburg County School District 17 ("Defendant" or "District") filed the instant motion to dismiss on June 5, 2013. [Doc. 22.] By Order filed June 6, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 27.] On July 3, 2013, Plaintiff filed a subsequent motion to amend the Amended Complaint [Doc. 30], and on July 10, 2013, filed a response opposing Defendant's motion to dismiss [Doc. 31]. On July 22, 2013, Defendant filed a reply in support of its motion to dismiss and a response opposing Plaintiff's motion to amend. [Doc. 33.] Both Defendant's motion to dismiss and Plaintiff's motion to amend are now ripe for consideration.

## BACKGROUND

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act [Doc. 15 at ¶ 4] alleging claims for breach of contract [*id*. at ¶¶ 47-50]; interference with benefits under the Family Medical Leave Act ("FMLA") [*id*. at ¶¶ 51-55]; failure to pay wages under the South Carolina Wage Payment Act [*id*. at ¶¶ 56-59]; retaliation under the FMLA [*id*. at ¶¶ 60-65]; retaliation under Title VII [*id*. at ¶¶ 66-70]; and discrimination under § 1981(b) [*id*. at ¶¶ 71-72].

Plaintiff began his employment with Defendant as a "Continuing Contract Teacher," teaching physical education, in 2006. [*Id*. at ¶ 9.] Plaintiff worked at Whitlock Junior High from 2006-2007; at Park Hills Elementary from 2007-2008 (as a traveling physical

education teacher); at Chapman Elementary, McCracken Junior High, and T.I.P Learning Academy from 2009-2010; and at Whitlock Flexible Learning Center from 2010 to the present. [*Id.*] Much of Plaintiff's Complaint details numerous instances of being reprimanded or "falsely accused" with respect to his interaction with students and/or teachers while on the job; Plaintiff also received multiple complaints about his job performance. [*See, e.g., id.* at ¶¶ 10-11, 15-16, 18-19, 23, 26-28.] Plaintiff was placed on probation for his alleged performance deficiencies, which Plaintiff claims is in violation of South Carolina law. [*Id.* ¶ 18.] Plaintiff also alleges that he was deducted for a full days' pay on days when he worked a half day, and he was not allowed flexibility in making up his days like the other teachers. [*Id.* ¶¶ 34–5.]

Plaintiff applied for and took FMLA leave from January to March 2012. [*Id.* at ¶ 39.] Plaintiff's FMLA leave was approved on December 5, 2011. [*Id.* at ¶ 43.] Plaintiff alleges that on March 9, 2012, Defendant accused him of failing to submit a doctor's note stating he could return to work in a sedentary position on January 3, 2012. [*Id.* at ¶ 36.] Plaintiff claims he sent the note to Defendants before December 8, 2011. [*Id.*] Plaintiff also claims he contacted the district office about returning to work in early January and was told the district office would have to make that determination. [*Id.*]

Upon returning to work after FMLA leave, Plaintiff alleges his pay was significantly reduced (from $4,977.33/month to $3,060.71/month). [*Id.* at ¶ 39.] Plaintiff was not informed of the change in his salary until March 13, 2013. [*Id.* at ¶ 40.] According to Plaintiff, he was sent a letter dated March 13, 2013, explaining that, because he exhausted his sick leave and was no longer receiving pay checks, he was removed from the payroll;

3

upon his return, the remaining contract amount was prorated.  [*Id.* at ¶ 42.]  Plaintiff claims

that Defendant cut his pay because he took FMLA leave and in retaliation for his EEOC

charge.[2]  [*Id.* at ¶ 44.]  Plaintiff further alleges that, in a letter dated May 1, 2013, he was

falsely accused of failing to follow district leave policies and was placed on leave without

pay.  [*Id.* at ¶ 45.]  Plaintiff contends a prior letter, dated April 18, 2013, indicated he was

placed on leave without pay because he was not receiving sick leave compensation. [*Id.*]

Plaintiff claims Defendant's unlawful actions resulted in his suffering lost wages, mental

suffering and anguish, humiliation, embarrassment and other damages. [*Id.* at ¶ 46.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Pleadings**

Plaintiff brought this action pro se, which requires the Court to liberally construe his

pleadings*. Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972)

(per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574

F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard

than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent

standard, however, the mandated liberal construction means that only if the court can

reasonably read the pleadings to state a valid claim on which the complainant could

prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court

may not construct the complainant's legal arguments for him.  *Small v. Endicott*, 998 F.2d

411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely

presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

---

[2] Plaintiff alleges he filed a charge of discrimination with the EEOC on January 7, 2011, received a right to sue letter, but ultimately decided not to pursue the charges.  [Doc. 15 at ¶ 8.]

4

**Motion to Dismiss Standards**

### Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded.  Fed. R. Civ. P. 12(b)(1).  The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "'(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"  *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).  Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised in two ways: "facial attacks" and "factual attacks."  *See Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *overruled on other grounds by Sheridan v. United States*, 487 U.S. 392 (1988).   A facial attack questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction; the  court analyzes a facial attack as it would a motion to dismiss under Rule 12(b)(6) such that "[t]he allegations in the complaint are taken as true, and materials outside the pleadings are not considered."  *Id.*

A "factual attack" challenges the truthfulness of the jurisdictional allegations in the complaint, *id.*, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213,1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553,

1558 (9th Cir. 1987)).  To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists."  *Id.* (citing *Trentacosta*, 813 F.2d at 1559); *see also   Dira v. Deutch*, 149 F.3d 1167, 1998 WL 276236, at *1 (4th Cir. 1998) (unpublished table decision) ("When such 'factual' challenges are asserted, a trial court may go beyond the allegations of the complaint, weigh the evidence, and satisfy itself as to its jurisdiction to hear the case.").

A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg*, 945 F.2d at 768 (citing *Trentacosta*, 813 F.2d at 1558). Typically, the burden of proving subject matter jurisdiction lies with the plaintiff, who asserts the jurisdiction.  *Id.*  "However, where a party challenges the subject matter jurisdiction of the court on the grounds that the party is an arm of the state entitled to sovereign immunity, the burden of persuasion lies with the party asserting the immunity."  *Hutto v. S.C. Ret. Sys.*, 899 F.Supp.2d 457, 466 (D.S.C. 2012) (citing *Woods v. Rondout Valley Cent. Sch. Dist. Bd. Of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006)).

### Rule 12(b)(6)

A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle her to relief.  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  Further, on a motion pursuant to Rule 12(b)(6), if matters outside the

pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (noting that court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

## **DISCUSSION**

**Eleventh Amendment Immunity**

Defendant seeks to have this action dismissed alleging that Plaintiff's suit against the District is barred by the Eleventh Amendment or, in the alternative, fails to state a claim upon which relief can be granted.  [Doc. 22.]  Specifically, Defendant contends the Court lacks subject matter jurisdiction to hear this claim as the District is an arm of the State for purposes of Eleventh Amendment immunity.   [Doc. 22-1 at 3-5.]  Defendant argues that Plaintiff, in his second and fourth causes of action for interference with benefits and retaliation under the FMLA , is seeking to recover lost wages and other money damages based on the District's alleged FMLA violations; however, because Plaintiff took leave pursuant to the self-care provision of the Act, his suit is barred as Congress did not validly abrogated the state's immunity from suits for money damages for violations of the FMLA self-care provision. [*Id.* at 5 (*citing Coleman v. Court of Appeals of Maryland*, _ U.S. _, 132 S.Ct. 1327, 1332 (2012); and *Chambers v. Med. Univ. Hosp. Auth.*, 2012 WL 2888802 (D.S.C. 2012) (claim against state agency for money damages under FMLA self-care provision was barred by the Eleventh Amendment, and state agency was entitled to summary judgment).]

With respect Plaintiff's claims under § 1981, Defendant argues that, likewise, Congress has not validly abrogated the state's sovereign immunity to suits under § 1981 and, thus, Plaintiff's claims are barred.  [*Id.* at 6 (*citing Huang v. Bd. of Governors of the University of North Carolina*, 902 F.2d 1134, 1138 (4th Cir. 1990)).]  And, with respect to Plaintiff's state law claims for breach of contract and under the Wage Payment Act,

8

Defendant likewise contends these claims are barred by the Eleventh Amendment. [*Id.* (citing *Huang*, 902 F.2d at 1138 (plaintiff properly conceded that Eleventh Amendment barred pendent state monetary damage claims against state defendant);and *Palotai v. University of Maryland College Park*, 959 F.Supp. 714, 719 (D. Md. 1997) (where federal question is the predicate for federal jurisdiction, it is settled law that the Eleventh Amendment bars adjudication of pendent state law claim in federal court)).]

In opposing Defendant's motion, Plaintiff contends the Eleventh Amendment bar is not applicable here as it does not apply to counties and similar municipal corporations. [Doc. 31 at 4.]  Plaintiff contends the Defendant here "is similar in every respect to the Defendant in *Mt. Healthy City School District Dist. Bd. of Educ.*, where the Supreme Court of the United States refused to find Eleventh Amendment immunity." [*Id.* at 5 (citing *Mt. Healthy City School District Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).][3] Consequently, Plaintiff argues this Court has subject matter jurisdiction to decide all of his claims. [*Id.*]

### Application of Eleventh Amendment Immunity to School District

The Eleventh Amendment prevents a federal court from entertaining a suit brought by a citizen against his own state, *Hans v. Louisiana*, 134 U.S. 1 (1890), or against an

---

[3]The holding in *Mr. Healthy City School District Bd. of Educ. v. Doyle*, is factually grounded in Ohio state law which grants extensive powers of the local school board within certain restrictions of state law.  *See, Mr. Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)(*citing* Ohio Rev.Code Ann. §§ 5705.02, 5705.03, 5705.192, 5705.194).  Ultimately, the Court determined that the school board in that case was more like a county or city than an arm of the state and, therefore, was not entitled to Eleventh Amendment immunity. *Id.* at 280-81.

instrumentality of the state considered an "arm of the State[.]" *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 430 (1997).  "Eleventh Amendment immunity has attributes of both subject matter jurisdiction and personal jurisdiction."  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005).  Like subject matter jurisdiction, it may be raised at any time but it may also be waived by the state like personal jurisdiction. *Id.* at 481.  The United States Court of Appeals for the Fourth Circuit has articulated a non-exhaustive list of four factors to be considered when determining whether or not a state-created entity is an arm of the state, and thus entitled to protection from suit by the Eleventh Amendment. *S.C. Dept. of Disabilities and Special Needs v. Hoover Univ. Inc.*, 535 F.3d 300, 303 (4th Cir.2008).  These factors are:

> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State;[4] (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions;[5] (3) whether the entity is involved with State concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State.

*Id.* (internal citations and alterations omitted); *see also Cash v. Granville Cnty. Bd. Of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001) (applying the same factors in a school district

---

[4] Previously, the "state treasury" factor was viewed as the most important, if not the determinative factor. *See Cash*, 242 F.3d at 223 (citing agreement among "the vast majority of Circuits" that "the State Treasury factor is the most important factor to be considered") (internal citations omitted).  The Fourth Circuit has acknowledged, however, that the first factor may no longer outweigh the remaining factors. *U.S. ex rel. Oberg v. Kentucky Higher Educ. Student Loan Corp.*, 681 F.3d 575, 580 n. 3 (4th Cir. 2012) (*citing Fed. Mar. Comm'n v. S.C. Ports Auth.*, 535 U.S. 743, 765 (2002) ("The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities.")).

[5] The District argues that these individual factors such as who appoints the directors or officers, who funds the entity and whether the State retains a veto over the entity's actions are inapposite here. [Doc. 37 at 4.]  As discussed below, the Court disagrees.

context). "These factors endeavor to draw the line between 'a State-created entity functioning independently of the State from a State-created entity functioning as an arm of the State or its alter ego.' " *U.S. ex rel. Oberg v. Kentucky Higher Educ. Student Loan Corp.*, 681 F.3d 575, 580 (4th Cir. 2012)(internal citations omitted).  The treasury inquiry is dispositive—if a state's treasury will be impacted, courts must draw a conclusion of Eleventh Amendment immunity.  *Cash*, 242 F.3d at 223.  However, if the treasury is not impacted, the remaining three factors must be analyzed to determine whether a judgment against the government entity would "adversely affect the dignity of the State as a sovereign and as one of the United States."  *Id.* at 224.  Therefore, the district court must explicitly perform this analysis before making a ruling on an Eleventh Amendment immunity defense.  *Id.* at 581.

Contrary to Defendant's assertion, the question of whether the school district is an arm of the state for purposes of Eleventh Amendment immunity analysis has not been settled in this district.  (*Compare, e.g., Eldeco, Inc. v. Skanska USA Building, Inc.*, 447 F.Supp.2d 521 (D.S.C. 2006)*, Calef v. Budden*, 361 F.Supp.2d 493, 497 (D.S.C.2005), *Smith v. School District of Greenville County*, 324 F.Supp.2d 786, 796 (D.S.C.2004),and *Stewart v. Laurens County School District*, 1992 WL 12014673, at *7 (D.S.C. Oct.2, 1992) (unpublished)(finding that school districts were arms of South Carolina (the "State") and thus immune from suit) with *Child Evangelism Fellowship of South Carolina v. Anderson School Dist. 5*, 438 F.Supp.2d 609 (D.S.C. 2006) (reversed and remanded on other grounds by *Child Evangelism Fellowship of South Carolina v. Anderson School Dist. 5*, 470 F.3d 1062 (4th Cir. 2006)), *Green v. Clarendon School District Three*, 923 F.Supp. 829,

11

850 (D.S.C.1996), and *Adams v. Richland School District One*, 412 F.Supp. 647, 651 (D.S.C.1976) (finding that the school districts were not arms of the State for purposes of Eleventh Amendment immunity)).  Thus, the Court must make a factual determination in this case regarding the applicability of Eleventh Amendment immunity by considering the above mentioned *Hoover* and *Cash* factors.  The Court ordered the parties to supplement their briefs as to this issue [Docs. 37, 39].  As noted above, with the assertion of immunity, Defendant bears the burden of demonstrating the Court lacks subject matter jurisdiction. *Hutto*, 899 F.Supp.2d at 466.

### 1. Impact on the State Treasury

The first consideration that the Court must undertake is whether a judgment against the District would impact the state treasury.  Defendant makes a compelling argument that much of District 7's budget comes from the state through the Education Finance Act of 1977, S.C. Code § 59-20-10 et seq., and the 1984 Education Improvement Act, S.C. Code Ann. § 59-21-420 et seq.  However, without discovery, the Court "is unable to reasonably consider this factor."  *Smith*, 324 F.Supp.2d at 792.  The Court has considered the affidavit of Missy Campbell [Doc. 37-1], under the dictates of Rule 12(b)(1), which allows the Court to consider evidence on subject matter jurisdiction without converting the motion to one for summary judgment.  *See Richmond, Fredericksburg*, 945 F.2d at 768.  However, the affidavit is insufficient to demonstrate that the state treasury would be implicated.  Ms. Campbell avers that she is the Chief Financial Officer for District 7.  [Doc. 37-1 ¶ 1.]  She testifies that the General Fund is the District's chief operating fund, which consists of state, local and federal revenues.  [*Id.* ¶ 2.]  State funds comprise half of the General Fund.  [*Id.*

12

¶ 3.] Funds remaining in the General Fund at the end of the year become part of the General Fund balance, and any adverse judgment from litigation would be paid from that balance. [*Id.* ¶ 4.] Therefore, Ms. Campbell "believe[s] the payment of a judgment against the School District would be funded, at least in part, with state funds." [*Id.* ¶ 5.]

District 7 points to *Martin v. Clemson Univ.* to support its position that any payment from state funds thereby negatively impacts the state treasury. 654 F.Supp.2d 410 (D.S.C. 2009). However, the district overlooks an important distinction in that case:

> The South Carolina Tort Claims Act ("SCTCA") specifically defines Clemson (and all other state-supported colleges and universities) as the "State" and a "state agency." *See* S.C. Code Ann. § 15-78-30(a) and (e). That Act makes the state and its agencies liable in tort and provides for recovery of damages up to a maximum of $300,000 per occurrence on state law tort claims. *Id.* § 15-78-120(a)(1). The state, therefore, would clearly be liable for any judgment for damages entered against Clemson on one or more of the plaintiff's tort claims.

*Id.* at 418 (D.S.C. 2009).[6] While the *Martin* court did note that any portion of the judgment not paid by insurance would have to be paid by the "state or Clemson from public funds, thereby negatively impacting the state treasury," as noted, the State would be liable for any such judgment and Clemson is considered to be a state agency. This case is more analogous to the Fourth Circuit's analysis in *Cash*. There, unlike in *Martin*, the state was not legally obligated to pay any judgment against the school board. *Cash*, 242 F.3d at 224. District 7 has not asserted that the State would be obligated to pay any judgment here. Nor has the district shown that the "State's allocation of funds would increase to cover a judgment . . . ." *Id.* The only argument that District 7 has made is that leftover state funds,

---

[6] The Court notes that the availability of insurance to cover some or all of a potential judgment against District 7 does not affect the District's entitlement to Eleventh Amendment immunity. *Martin*, 654 F.Supp.2d at 418 (citing *Regents of the Univ. of Calif.*, 519 U.S. at 431).

not allocated for litigation purposes, may be moved into a general slush fund from which a judgment may be paid. The Court finds that, without more, this "speculative, indirect and ancillary impact on the State treasury that a judgment against the School Board in this case would have does not give rise to Eleventh Amendment protection." *Id.* at 225.

Therefore, for purposes of this motion,[7] the Court will assume that there would be no impact on the state treasury, which supports Plaintiff's argument that sovereign immunity is not applicable. Because the Court assumes that the state treasury is not implicated, "the question of whether the School Board is entitled to Eleventh Amendment immunity will turn on whether [Plaintiff's] suit against the School Board would nonetheless impinge upon the sovereign dignity of [South] Carolina as a State within our federal system" and the Court proceeds to consider the remaining three factors. *See id*.

### 2. State Control

The second inquiry is the degree of control that the State has over District 7 and conversely, the amount of autonomy exercised by the District. The district alleges that it "derives its existence, maintenance and support from the state." [Doc. 37 at 6.] The district reports to three state authorities: the General Assembly, the State Department of Education and the State Board of Education. [*Id.*], S.C. Code §§ 59-1-40, 59-5-60, 59-5-65. The District points the Court toward the district court's analysis in *Smith v. Greenville County School Board*, which gave a thorough overview of the relevant State statutes that exert control over school districts in the State. *Smith*, 324 F.Supp.2d at 793-95. The *Smith* court reasoned

---

[7] The Court would be inclined to grant limited discovery on the treasury issue if requested by the District.

> Plaintiffs argue that heavy governmental regulation over the school districts is not indicative of control by the government. The Court disagrees. There are many examples of businesses that are extensively regulated by the government: the drug industry, the medical device industry, the tobacco industry, the railroad industry, the insurance industry and the utility industry, to name a few. However, in these industries, unlike in the instant case, the government does not generally control the hiring and firing of employees, the purchase and acquisition of property, and the construction of buildings. Nor does the government have the power to assume the management of such industries. That is, as a general rule, unlike the industries that the government merely regulates, the State controls those agencies in which it has delegated a portion of its own responsibilities.

*Id.* at 795.  Defendant also urges the Court to rely primarily on *Smith* because it was a defendant in that case, and thus argues that it has already been found to enjoy Eleventh Amendment immunity and this Court should not disrupt that finding.

In contrast to *Smith*, the district court in *Child Evangelism* followed the control analysis that the Fourth Circuit set out in *Md. Stadium Auth. V. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005).  *Child Evangelism*, 438 F.Supp.2d at 619.  In gauging the state's control over the school district, the court considered "(1) whether the state retains a veto over the entity's actions; (2) the origins of the entities funding; and (3) who appoints the entities directors."  *Id.* (quoting *Ellerbe Becket*, 407 F.3d at 251, n. 10 & 261 (internal quotation marks omitted).  The District argues that these individual factors should not apply because these "narrow sub-factors" concern the application of the Eleventh Amendment to multi-state Compact Clause entities rather than single-state created entities like the district.  [Doc. 37 at 4.]  The Court disagrees.  The Fourth Circuit has applied these factors in single-state created entity cases without any such distinction.  *See S.C. Dept. of*

*Disabilities and Special Needs*, 535 F.3d at 303; *Ellerbe Becket Inc.*, 407 F.3d at 260. Further and more importantly, the Fourth Circuit counseled in *Ellerbe Becket*,

> The Supreme Court has noted that "[g]auging actual control ... can be a 'perilous inquiry,' 'an uncertain and unreliable exercise.' " *Hess v. Port-Auth. Trans-Hudson Corp.,* 513 U.S. 30, 47, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). We believe the three factors analyzed in *Lake Country Estates* make for a less perilous journey. *We encourage district courts to analyze these three factors rather than engaging in a free-wheeling inquiry into the "autonomy" of the state entity in question.*

*Ellerbe Becket Inc.*, 407 F.3d 255, 262, n. 10 (4th Cir. 2005) (emphasis added). The Court views this as very clear guidance from the Fourth Circuit that these factors are to be applied. Therefore, the Court finds the analysis in *Child Evangelism* to be more compelling than that in *Smith*, which preceded *Ellerbe Becket*.

Applying the first factor, like in *Child Evangelism*, the District has not pointed to any specific provision to support the argument that the State retains any veto power over the District. Again, the District relies on the court's finding in *Smith* that the State exercises pervasive control over the school districts. However, "the *Smith* court analyzed the relationship between the State and its school districts for actual control and did not analyze the control factors under the sub-factors set forth in *Ellerbe Becket* or explicitly discuss the State's power to veto decisions of the District. As such, the District's mere reference to *Smith* does not establish that the State has the power to veto the District's decisions." *Child Evangelism*, 438 F.Supp.2d at 619. In applying the Fourth Circuit's analysis in *Cash*, the *Child Evangelism* court found that while school districts in North Carolina may have more autonomy than those in South Carolina, South Carolina school districts are "independent bod[ies] that can sue and be sued, purchase liability insurance and retain

16

private counsel, as it has in this case, without permission of the South Carolina Attorney General." *Id.* (citing *Cash*, 242 F.3d at 225; S.C. Code Ann. §§ 59-17-10 (1976); 1-11-140 (1986)).  Moreover, the court found that the multitude of regulations cited in Smith were "more akin to curriculum or certification requirements to ensure base levels of performance and education across the State," which the Fourth Circuit in *Cash* found to be insufficient to warrant a conclusion of control and Eleventh Amendment immunity.  *See id.* at 620.

    This Court agrees with analysis put forth in *Child Evanglelism*.  District 7 is a separate corporate body that is able to sue and be sued, and has hired its own private counsel for this suit.  The Court finds the control argument (and Eleventh Amendment immunity) to be particularly problematic in the context of the school districts, many of which have sued the State.  *See, e.g. Abbeville Cnty. Sch. Dist. v. State of South Carolina*, 515 S.E.2d 535 (1999).    While the *Child Evangelism* court acknowledged that the State did have power over certain decisions, such as requiring prior approval before the purchase or sale of real property, "[i]n sum, the court finds that, despite South Carolina's veto power over some aspects of the District's affairs, the District has failed to show that the State's veto power deprives it of the substantial autonomy it has in administering the policies and standards of the State." *Child Evangelism*, 438 F.Supp.2d at 620.  The District here does not even appear to dispute this finding, instead focusing its argument on the irrelevance of applying the *Ellerbe Becket* factors.  Having dispensed with that argument, the Court joins *Child Evangelism* in finding that the District does not meet the first prong of the control analysis.

The remaining two factors of funding of the District and appointment of the Board also weigh against a finding of state control. The District has acknowledged that only half of its funding comes from the state. [Doc. 37-1 ¶ 3.] Finally, the school board is appointed by the county board of education and not by the state. S.C. Code § 59-19-40; *Child Evangelism*, 438 F.Supp.2d at 620. Therefore, the Court finds that the District retains sufficient autonomy such that it is distinct from the State and a judgment against it would not affront the dignity of the State.

### 3. State-Wide Concern

The case law has been uniform in finding that school districts deal with local and not statewide concerns. *Cash*, 242 F.3d at 226; *Smith*, 324 F.Supp.2d at 795; *Child Evangelism*, 438 F.Supp.2d at 620. As the Fourth Circuit stated in *Cash*, though *education* is a statewide concern, a school district's jurisdiction and concern are "clearly" local. *Cash*, 242 F.3d at 226. Therefore, this factor weighs against a finding of immunity.

### 4. Treatment under State Law

The final factor, treatment under state law, "overlaps with [the] analysis of State control versus local autonomy." *Cash*, 242 F.3d at 226. In support of this prong, the District again reiterates that the General Assembly has power and discretion over the school districts and contrary to the provisions of the Home Act Rule, which govern counties, exercises substantial control over the districts. [Doc. 37 at 10.] As noted above, the Court finds it compelling that South Carolina school districts are considered autonomous entities. As noted in S.C. Code. Ann. § 59-17-10 (1976),

> Every school district is and shall be a body politic and corporate, by the name and style of _____ (a descriptive name may be designated by

18

> the county board of education or legislative act) School District No
> _____ (such number may be designated by the county board of
> education or legislative act), of _____ County (the name of the county
> in which the district is situated), the State of South Carolina. In that name it
> may sue and be sued and be capable of contracting and being contracted
> with to the extent of its school fund and holding such real and personal
> estate as it may have or come into possession of, by will or otherwise, or as
> is authorized by law to be purchased, all of which shall be used exclusively
> for school purposes.

The districts may sue and be sued (including making suits against the state), make

contracts, own property, carry liability insurance and hire their own counsel.  *See Child*

*Evangelism*, 438 F.Supp.2d at 620-21.  Moreover, school districts have been statutorily

defined as political subdivisions, like counties, rather than agencies of the State.  The

definitions of the Tort Claims Act define "state" as "the State of South Carolina and any of

its offices, agencies, authorities, departments, commissions, boards, divisions,

instrumentalities, including the South Carolina Protection and Advocacy System for the

Handicapped, Inc., and institutions, including state-supported governmental health care

facilities, schools, colleges, universities, and technical colleges."  S.C. Code Ann. § 15-78-

30(e).  In contrast, "political subdivision" is defined as "the counties, municipalities, school

districts, a regional transportation authority established pursuant to Chapter 25 of Title 58,

and an operator as defined in item (8) of § 58-25-20 which provides public transportation

on behalf of a regional transportation authority, and special purpose districts of the State

and any agency, governmental health care facility, department, or subdivision thereof."  *Id.*

§ (h).  While the Court agrees with the District that such language in the Tort Claims Act[8]

---

[8]

    While the District protests that the South Carolina Torts Claim Act's definitions are not sufficient to
prove the District is not entitled to immunity, the Court does note that *Martin*, upon which the District cites
heavily, relies upon the definitions in the South Carolina Torts Claim Act in determining that Clemson
University is entitled to Eleventh Amendment immunity because of the potential impact on the State
treasury.  *Martin*, 654 F.Supp.2d at 418.

is insufficient to establish that the school district is not an arm of the state, when weighed with all the other evidence described above, the Court concludes that the District is not treated as the State's alter ego and thus the District fails to meet the final prong of the analysis. In light of the foregoing, and in applying the Fourth Circuit's precedents in *Cash* and *Ellerbe Becket*, the Court determines that at this juncture and on the record before it, the District is not entitled to Eleventh Amendment immunity.

**Interference Claim under FMLA**

"The FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. " *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir.2001). Here, liberally construing his Complaint, Plaintiff is asserting both an interference claim and a retaliation claim.

The FMLA entitles eligible employees[9] up to 12 work weeks of unpaid leave during any 12-month period for numerous serious health conditions. 29 U.S.C. § 2612(a)(1)(A)-(D); *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 724 (2003). The FMLA guarantees Plaintiff the right not to be discriminated or retaliated against for exercising his substantive FMLA rights. 29 U.S.C. §§ 2615(a)(2), 2615(b). Section 2615(a)(1) of the FMLA statute specifically provides that "it shall be unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any

---

[9]The FMLA defines an "eligible employee" as an employee who has been employed (1) for at least 12 months by the employer, and (2) for at least 1,250 "hours of service" with such employer during the previous 12-month period. 29 U.S.C. § 2611(2)(A)(i)-(ii).

right provided under this subchapter."  Upon returning from FMLA leave, an employee is also entitled to  "be restored by the employer to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  *Id.* § 2414(a)(1)(A)-(B); *see Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 457 (4th Cir. 2007) (superceded on other grounds by regulation as stated in *Whiting v. The Johns Hopkins Hosp.*, 416 Fed. App'x. 312 (4th Cir. 2011) (under the FMLA, an employee has a "right to take a certain amount of unpaid medical leave each year and the right to reinstatement following such leave."))  Thus, an interference claim may be premised either on an improper denial of FMLA benefits, or a refusal to return the employee to comparable work with equivalent employment benefits, pay, and other conditions.  See, *Smith v. Hargray Communications Group*, 2012 WL 360098, at *3 (D.S.C. Jan. 10, 2012).

To establish unlawful interference with an entitlement to FMLA benefits, an employee must show that: "(1) he was an eligible employee, (2) his employer was covered[10] by the Act, (3) he was entitled to leave under the FMLA, (4) he gave his employer adequate notice of his intention to take leave, and (5) the employer denied his FMLA benefits to which he was entitled." *Carr* v. *Mike Reighenbach Ford Lincoln, Inc*., 2013 WL 1282105 at * 7 (D.S.C. Mar. 26, 2013) (*quoting King v. Blanchard Mach. Co.*, 2012 WL 4586177 at * 5 (D.S.C. Sept. 28, 2012)).  Here, Plaintiff alleges he was an eligible employee.  [Doc. 15 at ¶ 53 (Plaintiff alleges he worked for Defendant for at least 12 months prior to taking FMLA leave and logged over 1,200 hours of service in the prior

---

[10]The FMLA defines a covered "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year ." 29 U.S.C. § 2611(4)(A)(i) (1999).

year.).]    Plaintiff also alleges Defendant is a covered employer. [*Id.*] (Plaintiff alleges Defendant employs more than 50 employees.)    Plaintiff further alleges he took FMLA leave, but was not restored to his pre-FMLA rate of pay upon returning to work. [*Id.*] Defendant contends the "FMLA does not afford Plaintiff any right to paid leave, and he therefore cannot claim the School District violated the FMLA by prorating his pay to adjust for days he had not worked or did not have accrued paid leave benefits." [Doc. 22-1 at 11.]

At this stage of the proceedings, the only issue before the Court is whether Plaintiff's allegations state a plausible claim "on its face." *Iqbal*, 129 S.Ct. 1949. Whether Plaintiff was factually entitled to FMLA leave is an inquiry more appropriate for summary judgment. Plaintiff has adequately pled facts for each part of the required test for an FMLA interference claim. Considering Plaintiff's allegations in a light most favorable to him, the Court finds Plaintiff has alleged a claim of interference with FMLA benefits.[11] Accordingly, Defendant is not entitled to the dismissal of this claim.

**Retaliation Claim under FMLA**

As stated above, the FMLA creates two types of claims: interference claims and retaliation claims. *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d at 1206. In addition to the interference claim, Plaintiff also appears to assert an FMLA retaliation claim. Defendant contends Plaintiff's retaliation claim fails to state a claim because he has failed to plead any facts to support a plausible inference of a causal connection between his EEOC charge and any salary deduction, and failed to allege facts

---

[11]The Court makes no conclusions regarding the viability of Plaintiff's claim. Although Plaintiff attached documents to his Complaint related to the District's written guidance to employees regarding their benefits, leave rights, and FMLA entitlements and obligations, the Court did not consider these documents in ruling on this motion to dismiss as neither party specifically addresses the impact of these documents on Plaintiff's claims. Furthermore, Defendant did not ask the Court to alternatively consider its motion to dismiss as one for summary judgment.

sufficient to establish the essential knowledge or temporal proximity requirements (and thus fails to meet the test articulated below). [Doc. 22-1 at 8.] Plaintiff, on the other hand, submits he engaged in protected activity when he filed his EEOC charge[12] and when he took FMLA leave. [Doc. 31 at 7.] Plaintiff represents that, within days of filing his EEOC charge he received documented performance concerns[13] and within days of returning from FMLA leave, his pay was reduced. [*Id.*]

A retaliation claim under the FMLA is analyzed under the same standards as are applied to a Title VII retaliation claim. *See Laing v. Fed. Express Corp.*, 703 F.3d 713 , 718–719 (4th Cir. 2013); *Dodgens v. Kent Mfg. Co.*, 955 F.Supp. 560, 565–566 (D.S.C. 1997) (the appropriate analysis for retaliatory discharge under FMLA is that provided for Title VII for retaliatory discharge). Pursuant to this standard, "[t]he employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action."

---

[12]While Plaintiff argues in response to Defendant's motion to dismiss that he engaged in protected activity by filing EEOC charges *and* taking FMLA leave [Doc. 31 at 7], his claim for retaliation under the FMLA, as alleged in the Second Amended Complaint, raises a retaliation claim based solely on his taking FMLA leave, [see, Doc. 15 at ¶¶ 63-64]. Thus, the Court declines to address Plaintiff's FMLA retaliation claim with respect to his filing of EEOC charges.

[13]"An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375-76 (4th Cir.2004). Plaintiff does not allege that the terms, conditions or benefits of his employment were affected by the documented performance concerns; thus, the Court can not conclude that the documenting of performance concerns constitutes an adverse employment action. *See, Lewis v. Forest Pharmaceuticals, Inc.*, 217 F.Supp.2d 638, 648 (D.Md.2002) ("Reprimands, whether oral or written, do not per se significantly affect the terms or conditions of employment.") *citing Nye v. Roberts*, 159 F.Supp.2d 207, 213 (D.Md.2001); *Naughton v. Sears, Roebuck & Co.*, 2003 W L 360085 at *5 n. 1 (N.D.Ill.2003) (criticism, including a negative performance review or development plan, does not constitute and adverse employment action).

*Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989); *Munday v. Waste Management of North America, Inc.*, 126 F.3d 239, 242 (4th Cir.1997); *Blankenship v. Buchanan Gen. Hosp.*, 140 F.Supp.2d 668, 674 (W.D. Va. 2001).

Taking Plaintiff's allegations as true, in the light most favorable to him, the Court finds Plaintiff clearly alleges a claim for retaliation under the FMLA with respect to his taking FMLA leave. Plaintiff alleges he took FMLA leave[14] (a protected activity) and that, upon returning to work, he suffered a reduction in pay (adverse employment action). [Doc. 15 at ¶ 39.] Plaintiff further alleges that the reduction in pay was in retaliation for him taking FMLA leave (causal connection). [*Id.* at ¶ 63.] Accordingly, Plaintiff's claim of retaliation with respect to his taking of FMLA leave survives Defendant's motion to dismiss.[15]

## Retaliation Claim under Title VII and § 1981

Plaintiff also appears to allege a claim for retaliation under Title VII and 1981(b), claiming that Defendant retaliated against him for opposing racially discriminatory employment practices [Doc. 15 at ¶ 67] and that Defendant was motivated in part to retaliate and discriminate against Plaintiff for asserting his right to oppose the unlawful discrimination [*id.* at ¶ 72. Defendant argues Plaintiff's claim is barred for failure to timely

---

[14] *See, Miller v. Pilgrim's Pride Corporation*, 2007 WL 2007548 (W.D.Va. July 6, 2007)(holding that taking FMLA leave can be a protected activity sufficient to establish an FMLA retaliation claim).

[15] While the Court finds that Plaintiff's claim of retaliation based on taking FMLA leave survives the instant motion to dismiss, the Court makes no findings based on the merits of this claim. While some information related to payroll policies and procedures with respect to Plaintiff's compensation as a result of FMLA leave were attached to Plaintiff's Complaint, neither party addressed the effect of those procedures on Plaintiff's claims as alleged. Additionally, as previously noted, this motion is presented as one under Rule 12, not Rule 56.

file suit on this claim after receiving his Right to Sue letter from EEOC Charge #1 (defined below). [Doc. 22-1 at 9.]

Retaliation cases under Title VII and § 1981 are subject to the same requirements of proof as are applicable to disparate treatment claims.[16]  *Thomas v. Westinghouse Savannah River Co.,* 21 F.Supp.2d 551, 558 (D.S.C. 1997)(internal citations omitted). "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." *Id.*   Under Title VII and § 1981, however, the protected activity Plaintiff must have engaged in, for purposes of establishing a prima facie case,  is complaining about unlawful racial discrimination, as opposed to exercising his leave rights under the FMLA.  *See* 42 U.S.C. § 2000e–3 (a)("It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this sub-chapter.") The other criteria remain the same.  *Munday v. Waste Management of North America, Inc.*, 126 F.3d at 242.

Plaintiff's first EEOC charge ("EEOC Charge #1") was filed January 7, 2011, alleging unlawful discrimination.  [Doc. 15 at ¶ 8.]  Plaintiff alleges he received a Right to

---

[16]The standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same case law being used to evaluate a claim under either statute. *See Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1050 (8th Cir.2002) ["In analyzing a claim ... under section 1981, we apply the same standards as in a similar Title VII claim."]

Sue letter but decided not to pursue the claim. [*Id.*] A year later, Plaintiff applied for and took FMLA leave from January 2012 to March 2012. [*Id.* at ¶ 39.] Plaintiff alleges his first paycheck after returning from FMLA leave was significantly less than his prior monthly paychecks. Consequently, on April 10, 2012, Plaintiff filed a second EEOC charge ("EEOC Charge #2") alleging discrimination under Title VII for retaliation. [Doc. 22-2 at 2.] Plaintiff's charge alleged that

> Last year, I filed a complaint against my employer. In March 2012, I returned to work from medical leave, I received notification by letter that my salary would be decreased. This is a violation of my contract with the School District.
>
> I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, in retaliation for participating in a protected act.

[*Id.* at 3.] Plaintiff received a Right to Sue letter on January 17, 2013, indicated that the "EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge." [Doc. 31-1 at 1.]

Taking the allegations of the Complaint as true, the Court finds Plaintiff engaged in protected activity when he filed EEOC Charge # 1.[17] Because Plaintiff failed to pursue his claim of race discrimination within 90 days of his Right to Sue letter, however, this claim is barred from consideration by this Court. *Carter v. Holder*, 2013 WL 1499335 (D.S.C. Mar. 14, 2013) (the Fourth Circuit strictly adheres to the ninety-day rule). Additionally, the

---

[17]The Court notes that EEOC Charge #2 did not include a claim of race discrimination and, thus, can not be a basis for this claim of retaliation for opposing discrimination. *See, Stehle v. Gen. Mills Rest., Inc.*, 875 F.Supp. 320, 323 (D.S.C.1994)(a "civil suit under Title VII is limited to discrimination charged in the report to the EEOC or to discrimination actually found by the EEOC upon investigation of the original charge."); *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir.2002)("Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.") Furthermore, EEOC Charge #2 was filed *after* Plaintiff's pay was reduced; thus, factually, Charge #2 could not have prompted the reduction in pay.

Court finds that the alleged retaliatory action ("taking steps to cut Plaintiff's pay"), which occurred over a year after Plaintiff' filed EEOC Charge #1, is too remote to establish a causal connection sufficient to establish a prima facie case.[18]  *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (holding that temporal proximity must be "very close" to infer causality at prima facie case) (*citing Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997) (three month period insufficient to prove causal connection). Plaintiff's Amended Complaint makes no other allegations about engaging in protected activity with respect to complaints of race discrimination.  Accordingly, Defendant is entitled to the dismissal of Plaintiff's Title VII and 1981(b) retaliation claims.

**Breach of Contract**

In order to prevail on his claim of breach of contract, plaintiff bears the burden of establishing the existence and terms of the contract, defendant's breach of one or more of the contractual terms, and damages resulting from the breach. *Taylor v. Cummins Atlantic, Inc.* 852 F.Supp. 1279 (D.S.C. 1994), *(citing Fuller v. Eastern Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (1962)).  Plaintiff alleges he entered into a valid, enforceable contract with Defendant, and that Defendant breached the contract by failing to pay agreed upon wages. [Doc. 15 at ¶ 49.]  Defendant, without addressing the claim, alleges that because Plaintiff fails to state a viable federal law claim, the Court should dismiss his state law claims.  [Doc. 22-1 at 12.]

---

[18]Under the relevant Fourth Circuit law, once the employer has notice of the protected activity, a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989); *see Lettieri v. Equant Inc.*, 478 F.3d 640, 2007 WL 641813, *9 (4th Cir. March 5, 2007) (holding that a plaintiff can prove a causal connection by either the temporal proximity between the protected activity and allegedly retaliatory conduct or by other evidence of retaliatory animus).

At this stage of the proceedings, the only issue before the Court is whether the allegations of Plaintiff's Amended Complaint state a plausible claim for relief "on its face." *Iqbal*, 129 S.Ct. at 1949.  Defendant's argument fails because the Court has determined that Plaintiff's federal FMLA interference and retaliation claims may proceed.  Further, upon considering Plaintiff's allegations in a light most favorable to him, the Court finds Plaintiff has alleged facts sufficient to state all the elements of his breach of contract claim, and thus, dismissal under Rule 12(b)(6) should be denied.  *See Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir.2002)(for a complaint to survive a motion to dismiss, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim.").

**Payment of Wages Act Claim**

The South Carolina Payment of Wages Act (the "Act") creates a cause of action against an employer by an employee for failure of the employer to pay wages as required under that Act.  S.C.Code Ann. § 41–10–80(C). *See Cooper v. Ameritex Yarn, LLC*, 2005 WL 3240653 at * 4 (D.S.C. Nov.28, 2005)(South Carolina Wage Payment Act protects employees from unjustified and willful retention of wages by the employer).   Specifically, the Act provides that employers "shall pay all wages due to the employee within forty-eight hours of the time of separation or the next regular pay day which may not exceed thirty days."  S.C.Code Ann. § 41-10-50.

Again, at this stage of the proceedings, the only issue before the Court is whether the allegations of Plaintiff's Complaint state a plausible claim for relief "on its face."  *Iqbal*, 129 S.Ct. at 1949.   Plaintiff clearly alleges in his Amended Complaint that he was an

28

employee of Defendant, that the Defendant is an employer under that Act, and that the Defendant failed to pay him all of the wages that he had earned in violation of the Act. [Doc. 15 at ¶¶57-58.]  *See Mathis v. Brown & Brown of S.C., Inc.*, 698 S.E.2d 773, 781 (S.C. 2010). And while not specifically stated, the allegations of the Complaint suggest that Plaintiff did not timely receive payment of his wages. Defendant, again, without addressing the claim, alleges that because Plaintiff fails to state a viable federal law claim, the Court should dismiss his state law claims. [Doc. 22-1 at 12.] Since the allegations of the Complaint reflect that Plaintiff was not paid earned wages when due and as the Court will allow Plaintiff's FMLA claims to go forward, this claim is not subject to dismissal on a Rule 12 motion. *Vogt v. Greenmarine Holding, LLC*, 318 F.Supp.2d 136 (S.D.N.Y.2004) (finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt".)

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion to dismiss based on Eleventh Amendment immunity be DENIED; that Defendant's motion to dismiss for failure to state a claim be DENIED with respect to:

1. Plaintiff's First Cause of Action for Breach of Contract;

2. Plaintiff's Second Cause of Action for Interference under the FMLA;

3. Plaintiff's Third Cause of Action under the SC Wage Payment Act; and,

4. Plaintiff's Fourth Cause of Action for Retaliation under the FMLA;

and that Defendant's motion to dismiss for failure to state a claim be GRANTED with respect to:

    1.    Plaintiff's Fifth Cause of Action for retaliation under Title VII; and,

    2.    Plaintiff's Sixth Cause of Action for retaliation under § 1981.

Additionally, based on the above recommendations, the undersigned also recommends that Plaintiff's motion to amend be DENIED because Plaintiff's amendments would be futile.[19]  *See, Sciolino v. Newport News, Va.*, 480 F.3d 642, 651 (4th Cir.2007) (holding denial of leave to amend complaint appropriate where proposed claim is futile).

    IT IS SO RECOMMENDED.

<br>

                s/ Jacquelyn D. Austin
                United States Magistrate Judge

November 25, 2013
Greenville, South Carolina

---

[19]The Court has reviewed Plaintiff's proposed Amended Complaint. The only "new" allegations in the proposed Amended Complaint relate to Plaintiff's EEOC Charge #2 and his receipt of a Right to Sue notice. Because Plaintiff's reduction in pay occurred *prior to* the filing of  Charge #2, it can not serve as the basis for Plaintiff' claims. Thus, a grant of Plaintiff's motion would be futile.