IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Wendell Cooper, ) | Civil Action No. 7:13-cv-00991-JMC-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Spartanburg County School District No. 7, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on Defendant's motion for summary judgment. [Doc. 166.] Plaintiff is proceeding pro se. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed by individuals proceeding pro se and to submit findings and recommendations to the District Court.

Plaintiff filed this action on April 12, 2013 [Doc. 1], and amended his Complaint on May 6, 2013 [Doc. 15]. The Amended Complaint alleges causes of action for retaliation under Title VII of the Civil Rights Act ("Title VII") and under 42 U.S.C. § 1981; interference and retaliation under the Family Medical Leave Act ("FMLA"); failure to pay wages under the South Carolina Payment of Wages Act; and breach of contract. [*Id.*] On March 11, 2016, Defendant filed a motion for summary judgment. [Doc. 166.] Plaintiff filed a response in opposition on May 4, 2016 [Doc. 189], and Defendant filed a reply on May 16, 2016 [Doc. 191]. Accordingly, the motion for summary judgment is ripe for review.

## **BACKGROUND**

Plaintiff began working as a continuing contract teacher for Defendant in 2006. [Doc. 15 ¶ 9; Doc. 15-2 at 2.] Plaintiff was a physical education teacher at Whitlock Junior

High School for the 2006–2007 school year; a traveling physical education teacher at Park Hills Elementary/Pine Street for the 2007–2008 school year; a traveling physical education teacher at Chapman Elementary/McCracken Junior High School and T.I.P Learning Academy for the 2008–2009 school year; and a physical education teacher at Whitlock Flexible Learning Center ("Whitlock") each year since the 2010–2011 school year. [Doc. 15 ¶ 9; Doc. 166-2 ¶ 2.] Although the Amended Complaint addresses occurrences throughout many years of Plaintiff's employment, at issue in this case are events occurring during the 2011–2012 and 2012–2013 school years surrounding Plaintiff's FMLA leave.

**Plaintiff's First FMLA Leave and Return to Work**

In December 2011, Plaintiff requested FMLA leave beginning January 2, 2012. [Doc. 166-3 at 4 ¶ 10, 16–17; Doc. 166-5 at 5:10–7:8.] Wanda Andrews ("Andrews"), who was Defendant's Assistant Superintendent for Personnel at the time, approved Plaintiff's request for FMLA leave. [Doc. 166-3 at 2 ¶ 4, 4 ¶ 10, 19–20; Doc. 166-5 at 7:5–18.] In the approval letter, Andrews notified Plaintiff that any accrued leave may be substituted for unpaid leave and that once he used all accrued leave, his pay would be adjusted accordingly. [Doc. 166-3 at 19–20; Doc. 166-5 at 8:1–23.] She also notified Plaintiff that, in order for his request to be completed, he needed to have his doctor complete Defendant's standard form for FMLA leave, and that, upon his return to work, he would be required to provide a certification form confirming his fitness to return to duty. [Doc. 166-3 at 19–20.] On December 15, 2011, Andrews received a medical certification form, indicating Plaintiff would have surgery on December 16, 2011 and estimating Plaintiff's date

of return to work would be May 1, 2012.[1]  [*Id.* at 22–23.]  On January 31, 2012, while out on FMLA leave, Plaintiff sent another copy of what appears to be the same medical certification form that was submitted on December 15, 2011.  [*Id.* at 25–26.]  On March 8, 2012, Plaintiff's physician's office sent an updated medical form to Defendant, indicating that Plaintiff had been examined on January 19, 2012, that he could return to sedentary duty as of January 3, 2012, and that his estimated date of return to full duty would be May 1, 2012.[2]  [*Id.* at 28–29.]

On March 13, 2012, Plaintiff returned to work full time, and Defendant retained a teacher's aide in the classroom to assist Plaintiff with physical activities and demonstrations.  [*Id.* at 5 ¶ 18; Doc. 166-5 at 16:19–17:3, 22:1–5.]  After he returned to work, Plaintiff complained about his pay.[3]  [Doc. 166-3 at 5 ¶ 19; Doc. 166-4 at 4 ¶ 18.]  Nikki Gambrell ("Gambrell"), Defendant's Payroll Assistant, has averred that Plaintiff was rude and disrespectful to her on multiple occasions when complaining about his pay.  [Doc. 166-4 at 1 ¶ 1, 4 ¶ 18.]  Andrews received complaints from staff and payroll personnel that Plaintiff was repeatedly contacting them about his pay in a rude and unprofessional manner.  [Doc. 166-3 at 5 ¶ 19.]  Andrews met with Plaintiff on April 13, 2012.  [*Id.*]  During

---

[1] Defendant notes that its schools were closed for the two weeks following Plaintiff's surgery—from December 19, 2011 through December 30, 2011—for winter holiday break; therefore, Plaintiff's FMLA leave began when teachers returned to work on January 2, 2012.  [Doc. 166-1 at 4 n.3.]

[2] At the bottom of the form is a hand-written note from Plaintiff's physician indicating Plaintiff was seen on March 8, 2012 and nothing had changed since he was seen on January 19, 2012.  [Doc. 166-3 at 29.]

[3] Additionally, on April 6, 2012, Plaintiff filed a claim with the South Carolina Department of Labor, Licensing, and Regulation regarding his disagreement with how his salary was calculated after he returned from FMLA leave.  [Doc. 166-5 at 26:8–28:19.]

3

the meeting, Andrews reviewed the leave policies and explained how Plaintiff's pay was affected after his paid leave was depleted; reviewed the policies and procedures to properly address workplace grievances and complaints; and reviewed Plaintiff's job description and job history in addressing his responsibilities to work with his supervisors and other staff members in a cooperative and respectful manner and to follow proper protocol to address workplace grievances and complaints. [*Id.* at 5–6 ¶ 19.] Andrews also required Plaintiff to sign a copy of his job description to show they had reviewed and discussed the matters. [*Id.* at 6 ¶ 19.]

**Plaintiff's Second FMLA Leave**

On December 18, 2012, Plaintiff requested FMLA leave beginning December 19, 2012.[4] [Doc. 166-3 at 6 ¶ 20, 31–32; Doc. 166-5 at 37:9–38:7.] Andrews approved Plaintiff's request for FMLA leave. [Doc. 166-3 at 6 ¶ 20, 34–35; Doc. 166-5 at 38:9–17.] In the approval letter, Andrews notified Plaintiff that any accrued leave may be substituted for unpaid leave and that once he used all accrued leave, his pay would be adjusted accordingly. [Doc. 166-3 at 34–35.] She also notified Plaintiff that, upon his return to work, he would be required to provide a certification form confirming his fitness to return to duty. [*Id.*] While out on FMLA leave, Plaintiff requested and was granted further extensions of

---

[4]Plaintiff first requested FMLA leave for foot surgery on November 30, 2012. [Doc. 166-2 at 3 ¶ 7; Doc. 166-5 at 30:12–31:8.] However, on November 26, 2012, Plaintiff informed Paul Hughes ("Hughes"), who was Principal at Whitlock, that Plaintiff's cardiologist did not clear him for surgery on November 30, 2012, that he would meet with his doctor the following day, and that he would provide Hughes with information regarding when he would be cleared for surgery as soon as he received it. [Doc. 166-2 at 2 ¶ 1, 3 ¶ 7, 6.]

unpaid leave beyond the twelve weeks of FMLA leave; he did not return to work during the 2012–2013 school year. [Doc. 166-5 at 41:2–43:6.]

**Plaintiff's Charges of Discrimination**

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in January 2011, alleging unlawful discrimination (the "January 2011 Charge"); Plaintiff subsequently received a dismissal and notice of right to sue.[5] [Doc. 15 ¶ 8; Doc. 74 ¶ 8.] Plaintiff decided not to pursue a lawsuit related to the January 2011 Charge. [Doc. 15 ¶ 8.] In April 2012, Plaintiff filed another charge of discrimination with the EEOC, alleging retaliation (the "April 2012 Charge"). [Doc. 22-2.] On January 17, 2013, the EEOC issued a dismissal and notice of right to sue related to the April 2012 Charge. [Doc. 15-5 at 1.] Plaintiff filed this action on April 12, 2013 [Doc. 1], and amended his Complaint on May 6, 2013 [Doc. 15].

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the

---

[5]The record before the Court appears not to include a copy of the January 2011 Charge or the notice of dismissal and right to sue related to the January 2011 Charge.

5

pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's

position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

**Title VII and 42 U.S.C. § 1981 Retaliation Claims**

Under Title VII, an employer is forbidden from taking action that discriminates against an employee because that employee has either "opposed any practice made an unlawful employment practice by this subchapter" or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[6]  42 U.S.C. § 2000e–3(a).  The purpose of this antiretaliation provision is to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's most basic guarantees."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).  Likewise, § 1981, "which declares that all persons 'shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens'[,] prohibits not only racial discrimination but also retaliation against those who oppose it."  *University of Tex. Sw. Med. Ctr. v. Nassar*, --- U.S. ---, 133 S.Ct. 2517, 2529 (2013) (citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452–53 (2008).

A plaintiff may establish a violation of Title VII's antiretaliation provision either through direct and indirect evidence of retaliatory animus or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[7]  *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015).  Under the burden-shifting framework, an employee must first prove a prima facie case of retaliation.  *McDonnell*

---

[6]Through the two clauses of the antiretaliation provision, Title VII protects activities that "fall into two distinct categories: participation or opposition."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

[7]Plaintiff relies exclusively on the *McDonnell Douglas* burden-shifting scheme in this case.  [*See* Doc. 189.]

*Douglas*, 411 U.S. at 802. If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nonretaliatory reason for the adverse employment action. *Id.* By providing such an explanation, the employer rebuts the presumption of retaliation created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). If the employer articulates a legitimate, nonretaliatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for retaliation. *McDonnell Douglas*, 411 U.S. at 804.

Defendant contends Plaintiff cannot establish a prima facie case of retaliation. [Doc. 166-1 at 19–22.] To establish a prima facie case of retaliation, a plaintiff must demonstrate "(1) []he engaged in a protected activity, (2) the employer acted adversely against h[im], and (3) there was a causal connection between the protected activity and the asserted adverse action."[8] *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)). The Court agrees Plaintiff cannot establish a prima facie case of retaliation.

Plaintiff alleges he engaged in protected activity when he filed his charge of discrimination with the EEOC and when he took FMLA leave.[9] [Doc. 189 at 14, 16.]

---

[8]The elements of prima facie Title VII and § 1981 claims are the same, though "the causation standard for a Title VII claim may differ from that for a § 1981 claim after the Supreme Court's decision in [*Nassar*] (holding that but-for standard of causation applies to Title VII retaliation claims)." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 n.5 (4th Cir. 2015).

[9]Plaintiff's taking FMLA leave is not a protected activity within the meaning of Title VII or § 1981. *Moore v. Nat'l Tire & Battery*, No. 13-cv-01779 AW, 2013 WL 5587295, at

Plaintiff alleges the following adverse employment actions: documented performance concerns from the meeting between Plaintiff and Andrews on April 13, 2012; salary reduction when Plaintiff returned from FMLA leave; and refusal to allow Plaintiff to arrange make-up days.[10]  [Doc. 189 at 15–16[11]; Doc. 15 ¶¶ 35, 37, 39.]  Plaintiff asserts a causal connection exists between the protected activity and adverse employment actions because

> [t]he adverse employment actions were taken against [Plaintiff] within weeks and days of engaging in protected activities: [Plaintiff] returned from medical leave on March 12, 2012, and received notice of reduction in salary; [Plaintiff] filed his EEOC complaint on April 9, 2012 and on April 13, performance concern and action were taken against him; and in December 2012, while his EEOC charge was still pending, he was denied the opportunity to arrange for makeup days, which was allowed other teachers.

[Doc. 189 at 15.]

---

\* 3 (D. Md. Oct. 9, 2013) ("However, taking FMLA leave is not protected activity within the meaning of Title VII; it has nothing to do with whether an employee has a reasonable belief that the employer is violating her (or someone else's) rights under Title VII or has participated in a proceeding under Title VII."); *Bowman v. Holopack Intern. Corp.*, No. 3:06-1648-CMC-BM, 2007 WL 4481130, at \*14 (D.S.C. Dec. 19, 2007) ("Under Title VII and § 1981, the protected activity Plaintiff must have engaged in is complaining about unlawful racial discrimination, as opposed to exercising her leave rights under the FMLA."). Accordingly, for purposes of Plaintiff's Title VII and § 1981 retaliation claims, the Court considers only Plaintiff's charges of discrimination.

[10]Plaintiff's arguments regarding make-up days are somewhat confusing.  Plaintiff asserts that Defendant sent out a letter outlining make-up time for exchange days, but Plaintiff was on FMLA leave on the make-up time days and requested to make up the hours on other days.  [Doc. 189-1 at 4 ¶ 19.]  Plaintiff alleges that Defendant refused to allow him to make up the hours on other days, though they allowed similarly situated faculty to make other arrangements for their missed make-up days.  [*Id.*; *see also* Doc. 189-2 at 41.]

[11]The Court notes that two pages of Plaintiff's response in opposition to the motion for summary judgment were inadvertently filed out of order.  [Doc. 189 at 15–16 (Plaintiff's page 16 filed before page 15).]  As with all filings, the Court refers to the Court-stamped page numbers for these pages, but has read them in the appropriate order rather than the order in which they were filed.

First, performance concerns do not constitute adverse employment actions. The Supreme Court has clarified that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern & Santa Fe Rwy. v. White*, 26 S.Ct. 2405, 2412–13 (2006). However, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 2414. Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (quotation marks and citations omitted). Even under the less stringent standard set forth in *Burlington Northern*, Plaintiff's documented performance concerns[12] do not rise to the level of materially adverse employment actions. *See Parsons v. Wynne*, 221 F. App'x 197, 199 (4th Cir. 2007) (unpublished) (adverse performance evaluation and change in work schedule are not materially adverse actions); *Washington v. Norton*, No. 3:04-CV-104, 2007 WL 1417290, at *4 (N.D.W. Va. May 11, 2007) ("Reprimanding an employee for unprofessional conduct or warning an employee about poor performance by letter . . . would not dissuade a worker

---

[12]The Court notes that Plaintiff's meeting with Andrews most likely does not even rise to the level of the performance concerns addressed in the relevant caselaw. As stated, Andrews merely reviewed policies, procedures, and Plaintiff's job desription and explained to Plaintiff how his pay was affected during his FMLA leave. [Doc. 166-3 at 5–6 ¶ 19.] Although Andrews required Plaintiff to sign a copy of his job description to show they had reviewed and discussed these matters, Plaintiff was not issued a reprimand, placed on an improvement plan or probationary status, suspended or placed on administrative leave, transferred or reassigned, or terminated. [*Id.*; Doc. 166-5 at 47:23–48:20.]

from filing protected complaints"); *Gordon v. Gutierrez*, No. 1:06-cv-861, 2007 WL 30324, at *9 (E.D. Va. Jan. 4, 2007) ("circumstances of verbal counseling . . . would not discourage a reasonable employee").

Second, Plaintiff alleges his salary was reduced in connection with his taking FMLA leave. As stated, taking FMLA leave is not protected activity under Title VII or § 1981. Therefore, Plaintiff's salary reduction is not an adverse employment action under Title VII or § 1981.[13]

Third, with respect to his being denied the opportunity to arrange for make-up days, Plaintiff cannot establish a causal connection between his filing a charge of discrimination and being denied the opportunity to arrange for make-up days.[14] To prove a causal connection, a plaintiff asserting a retaliation claim must be able to show that her employer took the adverse action "'*because* the plaintiff engaged in a protected activity.'" *Holland*, 487 F.3d at 218 (emphasis in original) (quoting *Dowe v. Total Action Against Poverty in Roanoake Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). In certain circumstances, "very close" temporal proximity between the protected activity and the adverse action can be

---

[13]Moreover, as discussed infra, Defendant has established that Plaintiff's salary was reduced by the number of unpaid sick leave days he took in the 2011–2012 school year in accordance with the FMLA.

[14]The Court notes that Plaintiff does not specify whether the alleged adverse employment action relating to his not being able to reschedule make-up days occurred because he took FMLA leave or because he complained about unlawful employment discrimination under Title VII and/or § 1981. However, Plaintiff avers that he was charged two sick leave days for make-up days that occurred while he was on FMLA leave. [Doc. 189-1 ¶ 19.] Accordingly, it appears that this alleged adverse employment action relates to his taking FMLA leave. Out of an abundance of caution for the pro se Plaintiff, however, the Court will address this adverse employment action as one occurring under Title VII and § 1981.

probative of a causal connection. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001). The Fourth Circuit has held that two months and two weeks between protected activity and adverse action "is sufficiently long so as to weaken significantly the inference of causation between the two events." *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003). Because Plaintiff has offered no other evidence of causation and eight months had elapsed between the time he filed his April 2012 Charge and when he was denied the opportunity to reschedule make-up days in December 2012,[15] he cannot rely on temporal proximity alone to establish a causal connection. Therefore, Plaintiff cannot establish a prima facie case of retaliation under Title VII or § 1981, and Defendant's motion for summary judgment should be granted with respect to these claims.

**FMLA Claims**

The FMLA creates two types of claims: (1) interference claims, where an employee asserts that his employer denied or otherwise interfered with his substantive rights under the FMLA, *see* 29 U.S.C. § 2615(a)(1); and (2) retaliation claims, where an employee asserts that his employer discriminated against him because he engaged in activity protected by the FMLA, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave."). Plaintiff asserts both an interference claim and a retaliation claim. [Doc. 15.]

The FMLA grants eligible employees up to twelve workweeks of protected leave for "a serious health condition that makes the employee unable to perform the functions" of his

---

[15]Almost two years had elapsed between the time Plaintiff filed his January 2011 Charge and when he was denied the opportunity to reschedule make-up days in December 2012.

job. 29 U.S.C. § 2612(a)(1)(D). "When returning from FMLA leave, an employee is also entitled to be restored to his previous position or an equivalent position, so long as he would have retained that position or an equivalent one absent the taking of leave." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 426 (4th Cir. 2015) (citing *Yashenko v. Harrah's N.C. Casino Co.*, 446 F.3d 541, 546–47 (4th Cir. 2006)). It is unlawful for employers to "interfere with, restrain, or deny the exercise of or the attempt to exercise" either right. 29 U.S.C. § 2615(a)(1). To successfully "make out an 'interference claim' under the FMLA, an employee must thus demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams*, 789 F.3d at 427 (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). A retaliation claim under the FMLA is analyzed under the burden-shifting analysis that applies to a Title VII retaliation claim.[16] *See Laing v. Fed. Express Corp.*, 703 F.3d 713, 718–19 (4th Cir. 2013); *Dodgens v. Kent Mfg. Co.*, 955 F.Supp. 560, 565–66 (D.S.C. 1997).

Here, Plaintiff is unable to establish that Defendant interfered with any FMLA rights or retaliated against Plaintiff for exercising those rights. Plaintiff concedes that he applied for and took FMLA leave and that Defendant did not deny any medical leave Plaintiff requested.[17] [Doc. 15 ¶ 39; Doc. 166-5 at 7:5–18, 9:16–18, 21:12–25.] Instead, Plaintiff

---

[16]To establish a prima facie case of FMLA retaliation, a plaintiff must show (1) he engaged in protected activity; (2) the employer took adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse action. *Mercer v. Arc of Prince Georges Cty., Inc.*, 532 F. App'x 392, 398 (4th Cir. 2013).

[17]Indeed, Plaintiff was afforded unpaid leave beyond the twelve weeks of FMLA leave during the 2012–2013 school year. [Doc. 166-5 at 41:2–43:6.]

argues Defendant interfered with his leave and/or retaliated against him by reducing his salary when he returned from FMLA leave and by not allowing him to reschedule make-up days that occurred during his leave. [Doc. 189 at 17.] However, the FMLA explicitly permits employers to provide covered leave on an unpaid basis. 29 U.S.C. § 2612(c). Further, if an employer provides paid leave benefits to its employees, the FMLA provides that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for . . . any part of the 12-week period" of FMLA leave. 29 U.S.C. § 2612(d)(2)(B). That is exactly what happened in this case.

Andrews and Gambrell have averred that teachers are paid a salary based on a 190-day school term. [Doc. 166-3 at 3 ¶ 8; Doc. 166-4 at 2 ¶ 3.] Gambrell explains that although the school term is 190 days, Defendant's policy provides for twelve pay periods in the pay cycle; a teacher's pay for each pay period is calculated by dividing his full salary by twelve. [Doc. 166-4 at 2 ¶ 4.] Full-time teachers accrue paid sick leave benefits in accordance with Defendant's sick leave policy. [*Id.* at 3 ¶ 5.] Any absences in excess of paid leave benefits result in a deduction from a teacher's pay at the daily rate of compensation, which is calculated by dividing the teacher's full salary by 190 days. [*Id.*] When a teacher on extended medical leave exhausts all paid leave, the teacher is taken "off payroll," which signifies that the teacher is on unpaid leave; if the teacher returns to work during the school term, the teacher is placed back "on payroll," which signifies the teacher is back at work and to resume pay. [*Id.* at 3 ¶¶ 7–8.]

Plaintiff's salary for the 2011–2012 school year was $59,728.00,[18] and his daily rate of pay was $314.36. [*Id.* at 4 ¶ 9.] As stated, Plaintiff took FMLA leave beginning January 2, 2012. In her approval letters, Andrews informed Plaintiff that any accrued leave would be substituted for unpaid leave, and once he used all his accrued leave, his pay would be adjusted accordingly. [Doc. 166-3 at 19–20, 34–35.] Plaintiff's accrued paid leave was substituted for his unpaid FMLA leave until he used all of his accrued leave on January 11, 2012. [Doc. 166-4 at 4 ¶ 10.] Thus, he was taken "off payroll" from January 11, 2012 through March 12, 2012, and was placed "on payroll" when he returned to work on March 13, 2012; he was on unpaid leave for 42 days during the 2011–2012 school year.[19] [*Id.* at 4 ¶ 12.] Multiplying 42 days of unpaid leave by Plaintiff's daily rate of pay of $314.36 results in a deduction in Plaintiff's salary of $13,203.12; subtracting that deduction from his full salary of $59,728.00 indicates Plaintiff should have received $46,524.88 for the 2011–2012 school year. Plaintiff was actually paid $46,524.97 for the 2011–2012 school year.[20] [*Id.* at 4 ¶ 16, 7, 9.] Accordingly, Plaintiff's salary was adjusted in accordance with the FMLA's provisions that covered leave may be provided on an unpaid basis and that an

---

[18]The Court notes Gambrell's Affidavit appears to include a scrivener's error regarding Plaintiff's full salary for the 2011–2012 school year. It lists Plaintiff's salary as $57,928.00; however, the attached documentation lists Plaintiff's salary as $59,728.00. [*Compare* Doc. 166-4 at 4 ¶ 9 *with id.* at 7, 9.] Additionally, all calculations in Gambrell's Affidavit stemming from Plaintiff's full salary are based on a salary of $59,728.00 [*id.* at 4 ¶ 9 (daily rate of pay of $314.36 equals $59,728.00 divided by 190 days; pay period pay of $4,977.33 equals $59,728.00 divided by 12 pay periods)], and Plaintiff submitted documentation confirming that his salary was $59,728.00 [Doc. 189-2 at 15, 48].

[19]Defendant notes schools were closed on January 16, 2012 for Martin Luther King, Jr. Holiday. [Doc. 166-1 at 6 n.5.]

[20]The deductions from Plaintiff's pay occurred in February through July 2012. [Doc. 166-4 at 4 ¶¶ 11, 13–14; *see also id.* at 7, 9.]

16

employer may require the employee to substitute accrued paid leave for part of the 12-week period of FMLA leave.[21] Thus, Plaintiff is unable to establish that Defendant interfered with the provision of FMLA benefits or that Defendant took adverse action against him, and Defendant's motion for summary judgment should be granted with respect to these claims.

**State Law Claims**

Plaintiff's claims for failure to pay wages under the South Carolina Payment of Wages Act and for breach of contract could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[22] Federal courts are permitted to decline to

---

[21]Plaintiff's primary issue regarding his FMLA interference and retaliation claims appears to surround the calculation of his pay with respect to unpaid leave and when these deductions appeared from his paychecks. [Doc. 189 at 4 (". . . consequently all of his unpaid sick days would have been subtracted from salary prior to March 12, 2012 in accordance with school policy."), 17 (". . . his salary was reduced to $3060.70 upon his return from leave.").] However, as stated, Defendant has established that Plaintiff's salary was reduced by the number of unpaid sick leave days he took in the 2011–2012 school year; further, Gambrell has averred that Plaintiff's pay was calculated by an automated payroll system and adjusted in the same manner it was adjusted for any other teacher on unpaid leave for any reason. [Doc. 166-4 at 5 ¶ 19.]

With respect to Plaintiff's argument that he was not allowed to reschedule make-up days that occurred during his leave, Plaintiff has failed to establish a factual or legal basis for finding that this amounted to FMLA interference or retaliation. As stated, Plaintiff's arguments regarding make-up days are somewhat confusing. However, he bases this argument regarding his treatment versus other employees' treatment on conclusory allegations alone and has not provided the Court with any evidence to establish that others were allowed to reschedule make-up days. *See Ross*, 759 F.2d at 365 (holding that conclusory allegations, without more, are insufficient to preclude granting summary judgment). Moreover, Plaintiff has failed to provide the Court with any legal authority that the FMLA would require Defendant to allow Plaintiff to reschedule make-up days.

[22]A civil action for Plaintiff's state law claims could be cognizable in this Court under the diversity statute if that statute's requirements are satisfied. However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendant are both citizens

exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction." Because the Court recommends that all claims over which it has original jurisdiction be dismissed, the Court further recommends that the district judge decline to exercise supplemental jurisdiction over Plaintiff's state law claims in this case.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

June 15, 2016
Greenville, South Carolina

---

of the State of South Carolina, which defeats the required complete diversity of parties. *See* 28 U.S.C. § 1332.