**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | | |
|---|---|---|
| Wendell Cooper, | ) | |
| | ) | Civil Action No.: 7:13-cv-00991-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Spartanburg County School District No. 7, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Defendant Spartanburg County School District No. 7's ("Defendant") Motion for Summary Judgment. (ECF No. 166.) In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02, D.S.C., the matter was referred to United States Magistrate Judge Jacquelyn Austin for a Report and Recommendation. On June 15, 2016, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that the court grant Defendant's Motion for Summary Judgment. (ECF No. 202.) For the reasons stated herein, the court **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 202) with respect to the federal claim. Defendant's Motion for Summary Judgment (ECF No. 166) is **GRANTED** as to all claims. It is therefore **ORDERED** that Plaintiff's action (ECF No. 1) is **DISMISSED** with prejudice.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Wendell Cooper ("Plaintiff") began working as a continuing contract teacher for Defendant in 2006. (ECF No. 15 at 2 ¶ 9.) As of the 2010-2011 school year, Plaintiff served as a physical education teacher at Whitlock Flexible Learning Center ("Whitlock"). (*Id.*) In December of 2011, Plaintiff requested FMLA leave beginning January 2, 2012. (ECF No. 202 at 2.) Wanda Andrews ("Andrews"), who was Defendant's Assistant Superintendent for Personnel at the time,

1

approved Plaintiff's request for FMLA leave. (*Id.*) In the approval letter, Andrews notified Plaintiff that any accrued leave may be substituted for unpaid leave, and that once all accrued leave was used, his pay would be adjusted accordingly. (*Id.*) Andrews also notified Plaintiff that in order for his request to be completed, he needed to have his doctor complete Defendant's standard form for FMLA leave. (*Id.*) Further, Andrews informed Defendant that, upon his return to work, he would be required to provide a certification from his physician confirming his fitness to return to duty. (*Id.*) On December 15, 2011, Andrews received a medical certification form indicating that Plaintiff would have surgery on December 16, 2011, and would likely return to work on May 1, 2012.[1] (*Id.* at 2-3.) On January 31, 2012, Plaintiff sent another copy of the medical certification form that had been previously submitted on December 15, 2011. (*Id.*) On March 8, 2012, Plaintiff's physician sent an updated medical form to Defendant, which indicated that Plaintiff had been examined on January 19, 2012, and could return to sedentary duty as of January 3, 2012, but that his estimated date of return to full duty was May 1, 2012. (*Id.*)

On March 13, 2012, Plaintiff returned to work full time with the aid of a teacher's assistant to assist Plaintiff with physical activities and demonstrations. (*Id.*) After he returned to work, Plaintiff complained about his pay.[2] Andrews received complaints from staff and payroll personnel that Plaintiff was repeatedly contacting them about his pay in an unprofessional manner. (*Id.*) Andrews met with Plaintiff on April 13, 2012, to review the leave policies and explain to Plaintiff how his pay was affected after his accrued leave had been depleted. (*Id.* at 3-4.) Andrews also reviewed the policies and procedures regarding workplace grievances in addition to

---

[1] Defendant notes that Plaintiff's FMLA leave began on January 2, 2012, because the schools were closed during December 2011 following Plaintiff's surgery.

[2] On April 6, 2012, Plaintiff filed a claim with the South Carolina Department of Labor, Licensing, and Regulation regarding his disagreement as to the calculation of his salary upon his return from FMLA leave. (ECF No. 202 at 3, n. 3.)

documents detailing Plaintiff's job description. (*Id.* at 4.) Andrews also required Plaintiff to sign a copy of the job description to demonstrate that they had reviewed and discussed the matters. (*Id.*)

Subsequently, on December 18, 2012, Plaintiff requested FMLA leave for another surgery. Andrews approved Plaintiff's request for FMLA leave. (*Id.*) In the approval letter, Andrews again notified Plaintiff that accrued leave may be substituted for unpaid leave, but that once all accrued leave had been used, his pay would be adjusted accordingly. (*Id.*) While out on FMLA leave, Plaintiff requested and was granted extensions beyond the twelve weeks of FMLA leave, and Plaintiff did not return to work during the 2012-2013 school year.[3] (*Id.* at 4-5.)

On April 12, 2013, Plaintiff, proceeding pro se, filed this action alleging retaliation under Title VII of the Civil Rights Act ("Title VII") and 42 U.S.C. § 1981; interference and retaliation under the Family Medical Leave Act ("FMLA"); failure to pay wages under the South Carolina Payment of Wages Act; and breach of contract. (ECF No. 1.) Subsequently, Plaintiff filed an Amended Complaint on May 6, 2013. (ECF No. 15.) On March 11, 2016, Defendant filed a Motion for Summary Judgment along with a Memorandum in Support. (ECF No. 166.) On March 14, 2016, the Magistrate Judge entered an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and the possible consequences if he failed to respond adequately. (ECF No. 168.) Subsequently, on March 30, 2016, the Magistrate Judge entered an order extending the deadline for Plaintiff to file a response to

---

[3] While out on leave, Plaintiff filed a second charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation. On January 17, 2013, the EEOC issued a dismissal and notice of right to sue. (ECF No. 15-5 at 1.) Plaintiff filed this action on April 12, 2013. (ECF No. 1). Plaintiff also alleges that he filed an initial charge of discrimination with the EEOC in January of 2011, but subsequently decided not to pursue a lawsuit. (ECF No. 15 at 2 ¶ 8.)

3

Defendant's motion. (ECF No. 181). Plaintiff filed a Response to Defendant's Motion for Summary Judgment on May 4, 2016. (ECF No. 189.)

The Magistrate Judge issued her Report on June 15, 2016. (ECF No. 202.) Plaintiff was advised of his right to file objections to the Report. (ECF No. 202-1). Plaintiff filed Objections to the Report and Recommendation of Magistrate Judge ("Objections") on July 1, 2016. (ECF No. 207.)

## II. LEGAL STANDARD

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Matthews v. Weber*, 423 U.S. 261, 270-71 (1976). This court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter with instructions. *See* 28 U.S.C. § 636 (b)(1). Objections to a Report and Recommendation must specifically identify portions of the Report and the basis for those objections. Fed. R. Civ. P. 72(b). "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

As Plaintiff is a *pro se* litigant, the court is required to liberally construe his arguments. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). The court addresses those arguments that, under the mandated liberal construction, it has reasonably found to state a claim. *Barnett v.*

4

*Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

## III. ANALYSIS

In his Objections, Plaintiff identifies three areas of the Magistrate Judge's Report to which he objects. First, Plaintiff asserts that the Magistrate Judge erred in applying the incorrect standard of review for summary judgment. (ECF No. 207 at 2-3.) Second, Plaintiff contends that the Magistrate Judge's determination that Plaintiff could not establish a prima facie case of retaliation and interference under the FMLA is unsupported by the evidence in the record. (*Id.* at 3-4.) Finally, Plaintiff contends that the Magistrate Judge erred in declining to consider his state law claims. (*Id.* at 4.) Because Plaintiff has filed specific objections, the court will conduct a de novo review of the Report as to the Magistrate Judge's conclusions regarding the FMLA and state law claims. As to Plaintiff's claims under Title VII and section 1981, the court has reviewed the Report and does not find clear error.

1. **Standard of Review**

First, Plaintiff asserts that the Magistrate Judge used a more stringent standard for summary judgment than is required by the Supreme Court of the United States. Plaintiff cites *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) for the proposition that the Supreme Court requires courts to analyze motions for summary judgment on a "plausibility standard" whereby summary judgment should be denied if Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (ECF No. 207 at 3.) Plaintiff misinterprets the Supreme Court's decision in *Twombly*. In *Twombly*, the Court was concerned with whether the plaintiffs stated a sufficient claim under the Sherman Act to survive a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Twombly*, 550 U.S. at 555. When making a determination pursuant to Rule 12(b)(6), a court presumes that all facts

pled by the plaintiff are true, and determines whether the claims and facts as stated plausibly give rise to an entitlement to relief. *Id.* The court does not view evidence when making a determination under Rule 12(b)(6) because "the court's task is to test the legal feasibility of the complaint without weighing the evidence that might be offered to support or contradict it." *Lotus v. F.D.I.C.*, 989 F. Supp. 2d 483, 491 (D.S.C. 2013). However, when evaluating a motion for summary judgment pursuant to Rule 56, the court is required to view the evidence, and determine whether there is a genuine dispute as to the material facts giving rise to the claims for relief. If there is no genuine dispute as to a material fact, and the movant is entitled to judgment as a matter of law, then the court must grant summary judgment to the moving party. Fed. R. Civ. P. 56(a). Here, Defendant filed a motion for summary judgment. The court finds that the Magistrate Judge properly applied the summary judgment standard and liberally construed Plaintiff's complaint as required due to Plaintiff's status as a pro se litigant.

### 2. FMLA Claims

Second, Plaintiff contends that there is enough evidence in the record to support his retaliation and interference claims under the FMLA. The FMLA establishes two types of claims: "(1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act; and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Gleaton v. Monumental Life Ins. Co.*, 719 F. Supp. 2d 623, 633 n.3 (D.S.C. 2010) (internal citation omitted).

#### A. Interference Claim

To establish an unlawful interference claim under the FMLA, an employee must demonstrate that "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the

provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). Here, it is undisputed that Plaintiff applied for and was granted FMLA leave on two separate occasions totaling well over twelve weeks. Further, it is also undisputed that Defendant took no action to deny Plaintiff any medical leave requested. Plaintiff's only contention is that Defendant interfered with his leave by reducing his salary when he returned from FMLA leave.

This court finds that the Magistrate Judge properly concluded that Plaintiff cannot establish an interference claim under the FMLA. The FMLA grants eligible employees up to twelve work weeks of protected leave for "a serious health condition that makes the employee unable to perform the functions" of his job. 29 U.S.C. § 2612(a)(1)(D). The FMLA permits employers to provide that leave on an unpaid basis. 29 U.S.C. § 2612(c). The FMLA also permits employers to substitute accrued paid leave for any part of the twelve-week FMLA leave. *See* 29 U.S.C. § 2612(d)(2)(B). Further, the FMLA requires that upon returning from FMLA leave, an employee is entitled to be restored to his previous position or an equivalent position. *Adams*, 789 F.3d at 426. Plaintiff argues that he was not restored to his pre-FMLA salary and position because he usually received a monthly paycheck for $4,977.33, but only received $3,060.71 per month when he returned from FMLA leave. (ECF No. 15 at 14.) Defendant submitted evidence to demonstrate that Plaintiff's monthly paychecks were reduced by a daily rate of $314.36 for each day he was absent beyond his accrued paid leave. The daily rate was calculated by dividing his annual salary by the 190 days per year he is contracted to work.

Based on this court's review, Plaintiff returned to work in his same position as a physical education teacher, and his salary remained the same. However, Plaintiff's pay rate was adjusted because he did not work the 190 days he contracted to work. The court finds that the evidence

7

demonstrates that the adjustment to Plaintiff's pay rate was properly calculated. The FMLA only requires employers to grant employees the necessary twelve weeks of medical leave and allow them to return to work in a similar position, it does not require employers to pay employees for the twelve weeks they are absent. Based on this court's review of the record, the Magistrate Judge properly concluded that Plaintiff's pay rate was adjusted according to the number of weeks of unpaid leave he received under the FMLA.

### B. Retaliation Claim

To establish a claim for retaliation under the FMLA, Plaintiff must demonstrate that "he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006) (internal citation omitted). Here, it is undisputed that Plaintiff engaged in a protected activity under the FMLA by taking leave. However, Plaintiff asserts that he suffered from adverse employment actions by being denied the opportunity to make up days that other employees were allowed to make up, by not being allowed to return to work until almost two months beyond the time his doctor cleared him to return to work, and by inexplicably reducing his pay. (ECF No. 207 at 3-4). Plaintiff also asserts that the Magistrate Judge failed to consider the evidence of suspicious timing, ambiguous statements, and comments made to other employees. Plaintiff contends that he has presented enough evidence to support a claim of retaliation.

As a threshold matter, this court notes that Plaintiff is still currently employed by Defendant in his same position as a physical education teacher at Whitlock, and has received annual step increases to his salary pursuant to Defendant's salary schedules. (ECF No. 166-1 at 19.) However, Plaintiff seems to assert that because Defendant adjusted his pay rate due to his twelve-

week absence, he suffered an adverse employment action. As discussed above, Defendant properly adjusted Plaintiff's pay rate in accordance with the FMLA. Further, the other evidence offered by Plaintiff to support his contention that he suffered adverse employment actions is without merit. It is unclear from the pleadings which days Plaintiff was denied the opportunity to make up, but it is clear that the make-up days occurred during Plaintiff's FMLA leave. (ECF No. 189 at 17.) Accordingly, Plaintiff's salary was not "docked" two days as punishment as Plaintiff suggests, (*id.*), but because he was on unpaid FMLA leave.

Plaintiff also contends that he could have returned to work on January 3, 2012, but Defendant prevented him from doing so in retaliation for his first request to take FMLA leave. Based on the evidence in the record, the employer was not informed that Plaintiff could return to work on January 3, 2012. The first medical certification form was received by Defendant on December 15, 2011, and it indicated that Plaintiff's leave would end on May 1, 2012. (ECF No. 166-3 at 23.) Defendant received a fax on March 9, 2012, which indicated that Plaintiff had been examined on January 19, 2012, and could have returned to sedentary duty on January 3, 2012. (ECF No. 166-3 at 28.) Although Plaintiff sent a follow-up fax to the district on January 31, 2012, he sent the same form that Defendant received on December 15, 2011, indicating that his return to work would be May 1, 2012. (ECF No. 166-3 at 25.) Furthermore, shortly after Defendant received the fax on March 9, 2012, Defendant contacted Plaintiff regarding his return to work on March 13, 2012, which was well in advance of the original return date of May 1, 2012. Thus, the evidence in the record demonstrates that Defendant did not act to prevent Plaintiff from returning to work. Additionally, the court notes that there is no evidence in the record of Plaintiff attempting to contact the district and apprise them of an earlier return date between January 19, 2012, and March 13, 2012, although he was informed that he was required to notify the district immediately

of his return date.  (*See* ECF No. 166-3 at 19.)  Therefore, this court finds that the Magistrate Judge properly concluded that Plaintiff failed to establish a prima facie case for retaliation under the FMLA.

### 3. State Law Claims

Finally, Plaintiff asserts that the Magistrate Judge erred by failing to consider his state law claims for breach of contract and failure to pay wages under the South Carolina Payment of Wages Act.  The Magistrate Judge determined that it was proper for this court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims because the Magistrate Judge recommended that summary judgment be granted as to all of Plaintiff's federal claims.  Pursuant to 28 U.S.C. § 1367(c)(3), a court can decline to exercise supplemental jurisdiction over state law claims if the court has dismissed all claims for which it has original jurisdiction.  Though the court has discretion to dismiss state law claims after granting summary judgment as to the federal claims, it may be an abuse of discretion if the state statute of limitations expired prior to the dismissal of the federal claim.  *Ketema v. Midwest Stamping, Inc.*, 180 F. App'x 427 (4th Cir. 2006).  Because the statute of limitations for contract claims is three years, *see* S.C. Code Ann. § 15-3-530(1) (2016), this court finds that it would be error to dismiss Plaintiff's state law claims as the statute of limitations has either already expired or will expire very soon.  Thus, the court, exercising its supplemental jurisdiction, has conducted a *de novo* review of the record in order to consider whether Defendant is entitled to summary judgment as to Plaintiff's state law claims for breach of contract and violation of the South Carolina Payment of Wages Act.

### A. Breach of Contract

Plaintiff contends that Defendant breached its contract by failing to pay Plaintiff the wages agreed upon.  (ECF No. 15 at 17 ¶ 49.)  In order to establish a claim for breach of contract, Plaintiff

10

must demonstrate the existence of a valid contract, the breach of the contract, and damages caused by the breach. *Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009). The record demonstrates that Plaintiff and Defendant entered into a yearly continuing contract on May 13, 2011, for the 2011-2012 school year whereby Plaintiff agreed to "render acceptable service for 190 days." (ECF No. 189-2 at 49.) As part of that contract, Plaintiff was provided with information regarding Defendant's personnel sick leave policy. (*Id.* at 50.) The policy provides that employees earn up to twelve paid sick leave days per 190 days worked. (*Id.*) The policy further provides that any absences beyond the accrued sick leave "will require a full deduction of salary." (*Id.*) Here, it is undisputed that Plaintiff did not work the full 190 days he was contracted to work during the 2011-2012 or 2012-2013 school years. The evidence demonstrates that when Plaintiff requested FMLA leave, Defendant applied his accrued sick leave first, then in accordance with the personnel policy, reduced his salary by the daily rate for each day of Plaintiff's absence. Accordingly, Plaintiff has failed to establish that Defendant breached the contract with Plaintiff. Thus, Defendant is entitled to summary judgment as a matter of law as to the breach of contract claim.

### B. South Carolina Payment of Wages Act

Plaintiff asserts that Defendant violated the South Carolina Payment of Wages Act because it "failed to pay Plaintiff all the wages due." (ECF No. 15 at 19 ¶ 58.) "The South Carolina Payment of Wages Act is remedial legislation designed to protect working people and assist them in collecting compensation *wrongfully withheld*." *Abraham v. Palmetto Unified School Dist. No. 1*, 538 S.E.2d 656, 664 (S.C. Ct. App. 2000) (internal citation omitted) (emphasis in original). Because Plaintiff has failed to establish that any portion of his pay was wrongfully withheld, Defendant is entitled to summary judgment as to this claim.

## IV.     CONCLUSION

After a thorough review of the Report and the record in this case, the court finds the Report provides an accurate summary of the facts and law.  The court **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 202) with respect to the federal claim.  Defendant's Motion for Summary Judgment (ECF No. 166) is **GRANTED** as to all claims.  It is therefore **ORDERED** that Plaintiff's action (ECF No. 1) is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

July 6, 2016
Columbia, South Carolina